IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHARLEY J. WILLIE, JR,

Plaintiff,

v. CIV 15-0859 KBM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Plaintiff's Motion to Reverse and Remand to Agency for Rehearing, with Supporting Memorandum (*Doc. 20*), filed April 11, 2016. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *Doc. 12*. Having reviewed the parties' submissions, the relevant law, and the relevant portions of the Administrative Record, the Court will grant the Motion.

## I. Procedural History

Plaintiff filed applications with the Social Security Administration for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act on July 7, 2011. *AR* at 163-173.[1] Plaintiff alleged a disability onset date of April 5, 2011, due to "back issues." *AR* at 97, 104 163, 172. Plaintiff developed these "issues" after falling backward off of a six-foot wall. *AR* at 63. Prior to his fall Plaintiff worked as a picketer for a labor union, a truck washer, a forklift driver, a cook at

[1] Documents 15-1 through 15-19 comprise the sealed Administrative Record ("*AR*"). The Court cites the Record's internal pagination, rather than the CM/ECF document number and page.

a fast food restaurant, a dishwasher, and a car washer. *AR* at 81-82. The agency denied Plaintiff's claims initially and upon reconsideration, and Plaintiff requested a hearing. *AR* at 93-128.

After a *de novo* hearing, Administrative Law Judge Michelle K. Lindsay ("the ALJ") issued an unfavorable decision on March 28, 2014. *AR* at 39-47. Plaintiff submitted a Request for Review of the ALJ's Decision to the Appeals Council, which the Council declined on May 20, 2014. *AR* at 1-6, 33-35. As such, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). This Court has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).

A claimant seeking disability benefits must establish that he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a). The Commissioner must use a sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4); *see Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

At Step One of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant time period. *AR* at 41. At Step Two, she determined that Plaintiff had the severe impairments of "history of T10-T11 diskitis with osteomyelitis; status post T10-T11 corpectomy and T9-T11 fusion with laminectomy; degenerative disc disease of the lumbar spine; and obesity. . . ." *AR* at 41.

At Step Three, the ALJ concluded that Plaintiff's impairments, individually and in combination, did not meet or medically equal the regulatory "listings." *AR* at 42.

When a plaintiff does not meet a listed impairment, the ALJ must determine his residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e); 20 C.F.R. § 416.920(a)(4). RFC is a multidimensional description of the work-related abilities a plaintiff retains in spite of her medical impairments. 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.945(a)(1). The ALJ in this case determined that Plaintiff retained the RFC to "perform a wide range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)." *AR* at 42.

> Specifically, the claimant can lift and carry twenty pounds occasionally and ten pounds frequently. The claimant can stand and/or walk for six hours out of an eight-hour workday with regular breaks. The claimant can sit for six hours out of an eight-hour workday with regular breaks. The claimant can push and/or pull twenty pounds occasionally and ten pounds frequently. The claimant cannot climb ladders, ropes, or scaffolds.

*AR* at 42. Employing this RFC at Steps Four and Five, the ALJ determined that Plaintiff was unable to perform his past relevant work. *AR* at 45-46. However, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. *AR* at 46. Specifically, the ALJ determined that Plaintiff maintains the RFC to perform a full range of light work, resulting in a finding of "not disabled" pursuant to Medical-Vocational Rule 202.21. *AR* at 46 (citing SSR 83-14). Accordingly, the ALJ determined that Plaintiff was not disabled from his alleged onset date through the date of her decision, and denied benefits. *AR* at 47.

## II. Legal Standard

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012).

**III. Analysis**

Plaintiff argues that the ALJ erred by failing to develop the record as to his nonexertional impairments and failed to properly evaluate his obesity at Steps Three and Four of the sequential evaluation process. Because the Court concludes that remand is warranted on the first ground, it will not address Plaintiff's complaints as to the treatment of his obesity "because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

Plaintiff argues that the ALJ failed to develop the record as to his non-exertional impairments by neglecting to order a consultative examination with a mental status examination and WAIS testing. *Doc. 20* at 8. Plaintiff argues that the ALJ should have ordered a consultative examination in his case because the medical evidence in the record was inconclusive as to any cognitive impairment he may have and as to his depression. *Id.* at 10. After carefully reviewing the record in this case, the Court agrees.

While "[i]t is beyond dispute that the burden to prove disability in a social security case is on the claimant[,] . . . [n]evertheless, because a social security disability hearing is a nonadversarial proceeding, the ALJ is 'responsible in every case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.'" *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir.1997)). This duty is "heightened" when a

claimant, like Plaintiff, appears before the ALJ without counsel. *Madrid*, 447 F.3d at 790 (citing *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir.1993); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir.1992); *Dixon v. Heckler*, 811 F.2d 506, 510 (10th Cir.1987)); *see also Hill v. Sullivan*, 924 F.2d 972, 974 (10th Cir. 1991) ("this duty of inquiry 'takes on special urgency when the claimant [like claimant here] has little education and is unrepresented by counsel.'") (quoted authority omitted).

Still, "the Secretary has broad latitude in ordering consultative examinations." *Hawkins*, 113 F.3d at 1166 (citing *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 778 (10th Cir.1990)). The regulations permit an ALJ to order a consultative examination if the medical sources do not provide sufficient evidence about an impairment for the agency to determine whether a claimant is disabled. 20 C.F.R. § 404.1517; 20 C.F.R. § 416.917. Before purchasing a consultative examination, the agency considers existing medical reports, the disability interview form, and any other pertinent information in the record. 20 C.F.R. § 404.1519a(a); 20 C.F.R. § 416.919a(a). After considering this evidence, the agency "may purchase a consultative examination to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on your claim." 20 C.F.R. § 404.1519a(b); 20 C.F.R. § 416.919a(b).

> Some examples of when we might purchase a consultative examination to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis, include but are not limited to:
>
> > (1) The additional evidence needed is not contained in the records of your medical sources;
> > (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for

> reasons beyond your control, such as death or noncooperation of a medical source;
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources; or
> (4) There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.

20 C.F.R. § 404.1519a(b); 20 C.F.R. § 416.919a(b); *see also Hawkins*, 113 F.3d at 1166 ("where there is a direct conflict in the medical evidence requiring resolution, . . . or where the medical evidence in the record is inconclusive, . . . a consultative examination is often required for proper resolution of a disability claim. Similarly, where additional tests are required to explain a diagnosis already contained in the record, resort to a consultative examination may be necessary.") (citations omitted).

"When a claimant contends that the ALJ erred in failing to obtain a consultative examination, [the Court is] presented with the difficult issue of 'deciding what quantum of evidence a claimant must establish of a disabling impairment or combination of impairments before the ALJ will be required to look further.'" *Barrett v. Astrue*, 340 F. App'x 481, 486 (10th Cir. 2009) (quoting *Hawkins*, 113 F.3d at 1169). "As is usual in the law, the extreme cases are easy to decide . . . [t]he difficult cases are those where there is *some* evidence in the record or *some* allegation by a claimant of a possibly disabling condition, but that evidence, by itself, is less than compelling." *Hawkins*, 113 F.3d at 1167.

Thus, the Tenth Circuit has explained that "the starting place must be the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." *Id.* "Isolated and unsupported comments by the claimant are insufficient,

by themselves, to raise the suspicion of the existence of a nonexertional impairment." *Id.* (citation omitted). Rather, "[o]rdinarily, the claimant must in some fashion raise the issue sought to be developed . . . which, on its face, must be substantial." *Id.* (citations omitted). "[T]he claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists. When the claimant has satisfied his or her burden in that regard, it then, and only then, becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment." *Id.*

As noted above, Plaintiff did not claim disability due to a nonexertional impairment when applying for benefits. *See AR* at 97, 104 (reflecting that Plaintiff applied for benefits due to "back issues"). Nor did Plaintiff testify before the ALJ that he became disabled due to a nonexertional impairment. *See AR* at 63. Yet, Plaintiff now asserts that there was sufficient evidence before the ALJ to merit a consultative examination with a mental status examination and WAIS testing. *Doc. 20* at 8. In his brief, Plaintiff presents evidence of two putative impairments, one related to his cognitive functioning and one related to his depression.

As to the first, Plaintiff cites his testimony before the ALJ, wherein he testified that he has difficulties with reading and writing, specifically, spelling, and that, although he graduated high school, he was in special education in both middle and high school. *Doc. 20* at 9 (citing *AR* at 51, 56, 58). Plaintiff also cites a notation from an administration field office employee, indicating that he "seemed a little slow" during a face-to-face interview. *Id.* (citing *AR* at 198-199). Plaintiff also suggests that he "may" have suffered a head injury when he fell. *Id.* (citing *AR* at 63). However, Plaintiff cites no

medical records supporting a diagnosis of a brain injury or cognitive disorder resulting from his fall.

While these statements initially resemble the “isolated and unsupported” comments the Tenth Circuit cautioned against in *Hawkins*, the Court concludes that they provided sufficient cause for the ALJ to further investigate Plaintiff’s mental capacity in this uncounseled case. Plaintiff not only testified that he has problems with reading and writing, but that these problems significantly impacted his ability to perform normal activities and to progress in the work setting. For example, when he was asked whether he received the notification of his right to counsel, Plaintiff responded that he did not know, explaining that he has “a lot of problem (sic) with reading and writing and stuff[.]” *AR* at 51. When asked if he is able to read, Plaintiff responded “just a little, but not so much” because he has “big problems with reading and understanding big words and writing especially.” *AR* at 56. Plaintiff explained that he “pretty much” knows how to write but the problem lies in “the spelling words,” and responded affirmatively when asked whether he generally spells things the way they sound. *AR* at 56. Later, when he was asked why he does not drive, Plaintiff responded that he never obtained a driver’s license, again because has “difficulty reading and writing.” *AR* at 58. Similarly, Plaintiff was unsuccessful in his efforts to obtain a license to drive a forklift. *AR* at 61. Also telling, Plaintiff was unable to transition from a dishwasher position to a line cook when working at Village Inn, due to his “education.” *AR* at 62.

The ALJ acknowledged Plaintiff’s testimony in her decision denying benefits. *AR* at 43 (noting that Plaintiff “is a high school graduate and received special education services while in school. He indicated he continues to have difficulties with reading, comprehension, and spelling.”). Yet, the ALJ did not inquire further, nor did she send

Plaintiff for a consultative examination to assess the degree of his mental impairment, if any. Instead, the ALJ determined that Plaintiff maintains the RFC to "perform a wide range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)" with no nonexertional limitations. *AR* at 42. In the Court's view, this was error.

20 C.F.R. §§ 404.1567(b) and 416.967(b) set forth the physical exertion requirements of light work. However, they do not speak to the nonexertional requirements of light work, which can be quite broad depending on the job. Nor do they speak to the skill requirements of the work that Plaintiff is supposedly capable of doing within the exertional category of light work. *See* 20 C.F.R. § 404.1568; 20 C.F.R. § 416.968. While the Court notes that Plaintiff's past relevant work ranged from unskilled to skilled, *see AR* at 81-82, the ALJ concluded that Plaintiff is unable to complete any of his past relevant work, and so there is no indication of the skill level of work that Plaintiff can be expected to perform in the light exertional category. Complicating matters, there is no indication that Plaintiff's mental functioning was ever examined by the Commissioner at any stage of the administrative process, as is required by statute "in any case where there is evidence which indicates the existence of a mental impairment[.]" *See* 42 U.S.C. § 421(h)(1) (requiring "in any case where there is evidence which indicates the existence of a mental impairment, that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment"); *see also* 20 C.F.R. § 404.1520a and 20 C.F.R. § 416.920a (describing how the Commissioner evaluates mental impairments). Thus, the Court determines that remand is appropriate to assess the degree of Plaintiff's cognitive impairment, if any indeed exists.

Plaintiff's allegations of depression present a closer question. Unlike Plaintiff's potential cognitive impairment, there was nothing before the ALJ to suggest that Plaintiff suffers from depression to a degree that limits his ability to work -- there was no mention of Plaintiff's depression either in his applications for benefits or at the hearing before the ALJ. True, Plaintiff now cites medical records indicating mild to severe depression. *Doc. 20* at 9 (citing *AR* at 629, 678, 648). But the context of these records is important.

On March 30, 2012, when attempting to establish a new primary care provider, Plaintiff reported feeling depressed to Robert Surawski, M.D., but he did not report feelings of hopelessness, a loss of interest or loss of pleasurable things. *AR* at 629. In the assessment and plan portion of the medical record from this visit Dr. Williams "stressed the importance of trying to re-enter the workforce given his young age" and indicated that he believed returning to work would benefit Plaintiff "in many ways, including mental health, weight, pre-diabetes, and for financial reasons." *AR* at 629. On August 3, 2012, Plaintiff was assessed with severe depression and referred to counseling during a "homeless screening." *AR* at 678. However, there is no evidence that Plaintiff followed-up with this treatment. On March 10, 2014, Plaintiff was assessed with mild depression; however, no medications for depression were given, and Plaintiff was advised to return on an as needed basis. *AR* at 649. The question is whether these medical records triggered the ALJ's duty to develop the record as to Plaintiff's depression.

The Commissioner argues that they do not, relying upon *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). *Doc. 24* at 13. The Commissioner accurately quotes that case for the proposition that "[a] couple of isolated, passing references to depression buried in the record hardly suggested that the medical personnel who

examined Mr. Krauser missed or ignored a serious mental illness, undercutting his contention that the ALJ should have sent him for a consultative examination." *Id.* However, *Krauser* is distinguishable from the facts of this case. First, it is unclear whether the claimant in *Krauser* was unrepresented before the ALJ. Second, and more importantly, in *Krauser* there was no diagnosis of or treatment for depression in the record, beyond the plaintiff's own subjective complaints. *Id.* at n.1. The same is not true here.

Rather, in this case there is evidence of record diagnosing Plaintiff with "severe" depression. *AR* at 678. Thus, *Carter v. Chater*, 73 F.3d 1019, 1021-22 (10th Cir. 1996), rather than *Krauser*, controls. There, as here, the unrepresented claimant did not mention depression in her applications with the administration. *Id.* at 1021. However, as here, she did submit medical evidence to the ALJ in which she was diagnosed with depression. *Id.* at 1022. The court determined that this diagnosis "required the ALJ to develop the record concerning depression." *Id.* (citing *Hill v. Sullivan*, 924 F.2d 972, 974-5 (10th Cir. 1991).

*Hill* lends further support. There, as in this case, the unrepresented claimant did not allege disability due to depression in her application for benefits. *Hill*, 924 F.2d at 973. However, the Commissioner had the claimant evaluated by a specialist in psychiatry and family medicine. *Hill*, 924 F.2d at 973-4. Among other diagnoses, the specialist opined that the claimant was suffering from "chronic fatigue and lack of energy; this possibly could be more likely to be chronic mental depression in this patient." *Id.* at 974. The court concluded that because the record contained evidence of a mental impairment that allegedly prevented the claimant from working, the Commissioner was required to follow 20 C.F.R. § 404.1520a and evaluate the

claimant's alleged mental impairment. In the absence of this evaluation, the court held that the Commissioner "failed to follow the appropriate procedure" and so remanded the case "for proper consideration of [the] claimant's potential mental impairment." *Id.* at 975.

Likewise, in *Sanchez v. Apfel*, 210 F.3d 390 (10th Cir. 2000) (unpublished table decision), the Tenth Circuit noted that the unrepresented plaintiff did not raise depression initially when applying for benefits. Still, evidence in the record revealed a diagnosis of major depression. *Id.* at *2. The Tenth Circuit reviewed the evidence that was before the ALJ, and ultimately concluded that the "diagnosis of major depression triggered the ALJ's duty to further develop the record concerning that impairment." *Id.* at *3 (citing *Carter*, 73 F.3d at 1022). Specifically, the Tenth Circuit opined that the evidence in the record suggested "the existence of a condition which could have a material impact on the disability decision requiring further investigation." *Id.* (citing *Hawkins*, 113 F.3d at 1167). Importantly, the Tenth Circuit went on to "note also that the ALJ's duty to develop the record may have been heightened because there was no PRT [psychiatric review technique] in the record." *Id.* (citing *Hawkins*, 113 F.3d at 1165).

A similar rationale applies in this case. While Plaintiff himself did not identify depression as a potential mental impairment, either in his application or in his hearing before the ALJ, the record contained evidence that Plaintiff had been diagnosed with varying degrees of depression during the relevant time period. The presence of this evidence mandated that the ALJ, at a minimum, ensure that Plaintiff's potential mental impairment be evaluated pursuant to 20 C.F.R. § 404.1520a and 20 C.F.R. § 416.920a. This, however, did not occur -- there is no PRT or mental RFC findings in the record. Therefore, because Plaintiff was unrepresented before the ALJ, and because the ALJ's

duty to develop the record was heightened in the absence of a PRT, the Court finds that the ALJ erred in neglecting to order a consultative examination to assess the degree to which Plaintiff's alleged mental impairment of depression interferes with his ability to work.

## IV. Conclusion

Evidence in the record suggested that Plaintiff may have non-exertional impairments that could impact his ability to work that Plaintiff did not identify in his application. Indeed, the possible limitations may well explain the failure of the unrepresented claimant to raise those issues before the ALJ. Because the ALJ failed to adequately develop the record to address those issues, the Court finds that Plaintiff's motion to remand is well-taken and that this matter should be remanded so that Plaintiff's alleged mental impairments can be examined by a consultative examiner, as set forth above.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion to remand (*Doc. 20*) is **granted**.

Karen B Molzen

UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent